IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | | |
|---|---|---|
| Matthew Stevenson, | ) | Civil Action No. 8:10-cv-01565-DCN -JDA |
| | ) | |
| Plaintiff, | ) | **REPORT AND RECOMMENDATION** |
| | ) | **OF MAGISTRATE JUDGE** |
| vs. | ) | |
| | ) | |
| Michael J. Astrue, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the Court for a Report and Recommendation pursuant to Local Rule 73.02(B)(2)(a), D.S.C., and Title 28, United States Code, Section 636(b)(1)(B).[1] Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of a final decision of the Commissioner of Social Security ("Commissioner"), denying Plaintiff's claim for disability insurance benefits ("DIB"). For the reasons set forth below, it is recommended that the decision of the Commissioner be remanded pursuant to sentence four of 42 U.S.C. § 405(g) for administrative action consistent with this recommendation.

## PROCEDURAL HISTORY

Plaintiff protectively filed a claim for DIB on September 5, 2006,[2] alleging disability as of January 23, 2006.[3]  [R. 10, 46–47, 87–92.]  The claim was initially denied on

---

[1] A Report and Recommendation is being filed in this case, in which one or both parties declined to consent to disposition by a magistrate judge.

[2] Plaintiff also filed an application for supplemental security income ("SSI") [R. 93–95], but, presumably, this claim was denied initially and Plaintiff did not pursue it further.  The only record the Court has of Plaintiff's SSI claim is the SSI application.

[3] Plaintiff previously filed an application for DIB on April 14, 2006, which was denied initially on June 12, 2006, without appeal.  [R. 10, 45, 48–52.]  When considering Plaintiff's September 2006 DIB application, the ALJ did not consider the merits of the June 12, 2006 determination and reviewed it only to decide whether

November 14, 2005 [R. 46, 53–57] and was denied on reconsideration by the Social Security Administration ("Administration") on February 13, 2007 [R. 47, 61–63]. Plaintiff filed a request for hearing [R. 64], and on March 26, 2009, Administrative Law Judge ("ALJ") Albert A. Reed held a hearing on Plaintiff's claim [R. 23–44].

On April 15, 2009, the ALJ issued his decision that Plaintiff was not disabled under §§ 216(i) and 223(d) of the Social Security Act ("the Act"). [R. 7–22.] Following his review of the evidence, the ALJ found Plaintiff had a severe impairment, post traumatic stress disorder [R. 12, Finding 3], but Plaintiff's impairment or combination of impairments did not meet or medically equal one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 [R. 13, Finding 4]. The ALJ also found Plaintiff retained the residual functional capacity to perform a full range of work at all exertional levels but required the following non-exertional limitations: unskilled, low stress work—which the ALJ defined as requiring few decisions—that does not require interaction with the public. [R. 14, Finding 5.] With these restrictions, the ALJ found Plaintiff was unable to perform any past relevant work [R. 20, Finding 6], but jobs existed in significant numbers in the national economy Plaintiff could perform [R. 21, Finding 10]. Accordingly, the ALJ found that from June 12, 2006—the date of the Commissioner's previous final and binding decision—through the ALJ's decision date, Plaintiff was not under a disability as defined under the Act. [R. 21, Finding 11.]

---

there was any reason to re-open it. [*Id*.] The ALJ found no reason to re-open that determination, and he referenced the prior application in his decision solely for the purposes of placing Plaintiff's conditions in historical context and considering the findings pursuant to *Albright v. Commissioner of Social Security*, 174 F.3d 473 (4th Cir. 1999). [*Id*.] Therefore, the ALJ considered June 12, 2006 as the date of Plaintiff's onset of disability. [R. 12.] Plaintiff does not challenge these conclusions.

On April 26, 2010, the ALJ's findings became the final decision of the Commissioner when the Appeals Council denied Plaintiff's request for review of the hearing decision. [R. 1–5; 20 C.F.R. § 404.981.] Plaintiff filed this action for judicial review on June 17, 2010. [Doc. 1.]

## THE PARTIES' POSITIONS

Plaintiff contends the ALJ erred in finding Plaintiff was not disabled because he meets Listing 12.06, Anxiety Related Disorders. Plaintiff also contends the ALJ's findings that Plaintiff has the residual functional capacity to perform a full range of work at all exertional levels, with non-exertional limitations, and is able to perform other jobs in the national economy are not supported by substantial evidence.

The Commissioner argues (1) the ALJ reasonably found Plaintiff's post traumatic stress disorder did not meet or medically equal Listing 12.06 and (2) substantial evidence supports the ALJ's findings regarding Plaintiff's residual functional capacity and his ability to perform other work.

## STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla—i.e., the evidence must do more than merely create a suspicion of the existence of a fact and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966) (citing *Woolridge v. Celebrezze*, 214 F. Supp. 686, 687 (S.D.W. Va. 1963)) ("Substantial evidence, it has been held, is evidence which a reasoning

mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'").

Where conflicting evidence "'allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the [Commissioner's] designate, the ALJ),'" not on the reviewing court. *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996) (quoting *Walker v. Bowen*, 834 F.2d 635, 640 (7th Cir. 1987)); *see also Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991) (stating that where the Commissioner's decision is supported by substantial evidence, the court will affirm, even if the reviewer would have reached a contrary result as finder of fact and even if the reviewer finds that the evidence preponderates against the Commissioner's decision). Thus, it is not within the province of a reviewing court to determine the weight of the evidence, nor is it the court's function to substitute its judgment for that of the Commissioner so long as the decision is supported by substantial evidence. *Laws*, 368 F.2d at 642; *Snyder v. Ribicoff*, 307 F.2d 518, 520 (4th Cir. 1962).

The reviewing court will reverse a Commissioner's decision on plenary review, however, if the decision applies incorrect law or fails to provide the court with sufficient reasoning to determine that the Commissioner properly applied the law. *Myers v. Califano*, 611 F.2d 980, 982 (4th Cir. 1980); *see also Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994). Where the Commissioner's decision "is in clear disregard of the overwhelming weight of the evidence, Congress has empowered the courts to modify or reverse the [Commissioner's] decision 'with or without remanding the

4

cause for a rehearing.'" *Vitek v. Finch*, 438 F.2d 1157, 1158 (4th Cir. 1971) (quoting 42 U.S.C. § 405(g)).  Remand is unnecessary where "the record does not contain substantial evidence to support a decision denying coverage under the correct legal standard and when reopening the record for more evidence would serve no purpose." *Breeden v. Weinberger*, 493 F.2d 1002, 1012 (4th Cir. 1974).

The court may remand a case to the Commissioner for a rehearing under sentence four or sentence six of 42 U.S.C. § 405(g).  *Sargent v. Sullivan*, 941 F.2d 1207 (4th Cir. 1991) (unpublished table decision).  To remand under sentence four, the reviewing court must find either that the Commissioner's decision is not supported by substantial evidence or that the Commissioner incorrectly applied the law relevant to the disability claim. *See, e.g.*, *Jackson v. Chater*, 99 F.3d 1086, 1090–91 (11th Cir. 1996) (holding remand was appropriate where the ALJ failed to develop a full and fair record of the plaintiff's residual functional capacity); *Brehem v. Harris*, 621 F.2d 688, 690 (5th Cir. 1980) (holding remand was appropriate where record was insufficient to affirm but was also insufficient for court to find the plaintiff disabled).    Where the court cannot discern the basis for the Commissioner's decision, a remand under sentence four may be appropriate to allow the Commissioner to explain the basis for the decision. *See Smith v. Heckler*, 782 F.2d 1176, 1181–82 (4th Cir. 1986) (remanding case where decision of ALJ contained "a gap in its reasoning" because ALJ did not say he was discounting testimony or why); *Gordon v. Schweiker*, 725 F.2d 231, 235 (4th Cir. 1984) (remanding case where neither the ALJ nor the Appeals Council indicated the weight given to relevant evidence).  On remand under sentence four, the ALJ should review the case on a complete record, including any new material evidence.  *See Smith*, 782 F.2d at 1182 ("The [Commissioner] and the claimant

5

may produce further evidence on remand."). After a remand under sentence four, the court enters a final and immediately appealable judgment and then loses jurisdiction. *Sargent*, 941 F.2d 1207 (citing *Melkonyan v. Sullivan*, 501 U.S. 89, 102 (1991)).

In contrast, sentence six provides:

> The court may . . . at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding . . . .

42 U.S.C. § 405(g). A reviewing court may remand a case to the Commissioner on the basis of new evidence only if four prerequisites are met: (1) the evidence is relevant to the determination of disability at the time the application was first filed; (2) the evidence is material to the extent that the Commissioner's decision might reasonably have been different had the new evidence been before him; (3) there is good cause for the claimant's failure to submit the evidence when the claim was before the Commissioner; and (4) the claimant made at least a general showing of the nature of the new evidence to the reviewing court. *Borders v. Heckler*, 777 F.2d 954, 955 (4th Cir. 1985) (citing 42 U.S.C. § 405(g); *Mitchell v. Schweiker*, 699 F.2d 185, 188 (4th Cir. 1983); *Sims v. Harris*, 631 F.2d 26, 28 (4th Cir. 1980); *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979)), *superseded by amendment to statute*, 42 U.S.C. § 405(g), *as recognized in Wilkins v. Sec'y, Dep't of Health & Human Servs.*, 925 F.2d 769, 774 (4th Cir. 1991).[4] With remand under sentence

---

[4] Though the court in *Wilkins* indicated in a parenthetical that the four-part test set forth in *Borders* had been superseded by an amendment to 42 U.S.C. § 405(g), courts in the Fourth Circuit have continued to cite the requirements outlined in *Borders* when evaluating a claim for remand based on new evidence. *See, e.g.*, *Ashton v. Astrue*, No. 6:10-cv-152, 2010 WL 5478646, at *8 (D.S.C. Nov. 23, 2010); *Washington v. Comm'r of Soc. Sec.*, No. 2:08-cv-93, 2009 WL 86737, at *5 (E.D. Va. Jan. 13, 2009); *Brock v. Sec'y of Health & Human Servs.*, 807 F. Supp. 1248, 1250 n.3 (S.D.W. Va. 1992). Further, the Supreme Court of the United States has not suggested *Borders'* construction of § 405(g) is incorrect. *See Sullivan v. Finkelstein*, 496 U.S.

6

six, the parties must return to the court after remand to file modified findings of fact. *Melkonyan*, 501 U.S. at 98. The reviewing court retains jurisdiction pending remand and does not enter a final judgment until after the completion of remand proceedings. *See Allen v. Chater*, 67 F.3d 293 (4th Cir. 1995) (unpublished table decision) (holding that an order remanding a claim for Social Security benefits pursuant to sentence six of 42 U.S.C. § 405(g) is not a final order).

## APPLICABLE LAW

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a disability. 42 U.S.C. § 423(a). "Disability" is defined as:

> the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 consecutive months.

*Id.* § 423(d)(1)(A).

## I.     The Five Step Evaluation

To facilitate uniform and efficient processing of disability claims, federal regulations have reduced the statutory definition of disability to a series of five sequential questions. *See, e.g.*, *Heckler v. Campbell*, 461 U.S. 458, 461 n.2 (1983) (noting a "need for efficiency" in considering disability claims). The ALJ must consider whether (1) the claimant is engaged in substantial gainful activity; (2) the claimant has a severe impairment; (3) the impairment meets or equals an impairment included in the Administration's Official Listings

---

617, 626 n.6 (1990). Accordingly, the Court will apply the more stringent *Borders* inquiry.

7

of Impairments found at 20 C.F.R. Pt. 404, Subpt. P, App. 1; (4) the impairment prevents the claimant from performing past relevant work; and (5) the impairment prevents the claimant from having substantial gainful employment.  20 C.F.R. § 404.1520.  Through the fourth step, the burden of production and proof is on the claimant.  *Grant v. Schweiker*, 699 F.2d 189, 191 (4th Cir. 1983).  The claimant must prove disability on or before the last day of her insured status to receive disability benefits.  *Everett v. Sec'y of Health, Educ. & Welfare*, 412 F.2d 842, 843 (4th Cir. 1969).  If the inquiry reaches step five, the burden shifts to the Commissioner to produce evidence that other jobs exist in the national economy that the claimant can perform, considering the claimant's age, education, and work experience.  *Id.*  If at any step of the evaluation the ALJ can find an individual is disabled or not disabled, further inquiry is unnecessary.  20 C.F.R. § 404.1520(a),; *Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981).

### A.     *Substantial Gainful Activity*

"Substantial gainful activity" must be both substantial—involves doing significant physical or mental activities, 20 C.F.R. § 404.1572(a)—and gainful—done for pay or profit, whether or not a profit is realized, 20 C.F.R. § 404.1572(b).  If an individual has earnings from employment or self-employment above a specific level set out in the regulations, he is generally presumed to be able to engage in substantial gainful activity.  20 C.F.R. § 404.1574–.1575.

### B.     *Severe Impairment*

An impairment is "severe" if it significantly limits an individual's ability to perform basic work activities.  *See* 20 C.F.R. § 404.1521.  When determining whether a claimant's physical and mental impairments are sufficiently severe, the ALJ must consider the combined effect of all of the claimant's impairments.  42 U.S.C. § 423(d)(2)(B).  The ALJ must evaluate a disability claimant as a whole person and not in the abstract, having several hypothetical and isolated illnesses. *Walker v. Bowen*, 889 F.2d 47, 49–50 (4th Cir. 1989) (stating that, when evaluating the effect of a number of impairments on a disability claimant, "the [Commissioner] must consider the combined effect of a claimant's impairments and not fragmentize them").  Accordingly, the ALJ must make specific and well-articulated findings as to the effect of a combination of impairments when determining whether an individual is disabled.  *Id.* at 50 ("As a corollary to this rule, the ALJ must adequately explain his or her evaluation of the combined effects of the impairments.").  If the ALJ finds a combination of impairments to be severe, "the combined impact of the impairments shall be considered throughout the disability determination process."  42 U.S.C. § 423(d)(2)(B).

### C.     *Meets or Equals an Impairment Listed in the Listings of Impairments*

If a claimant's impairment or combination of impairments meets or medically equals the criteria of a listing found at 20 C.F.R. Pt. 404, Subpt. P, App.1 and meets the duration requirement found at 20 C.F.R. § 404.1509, the ALJ will find the claimant disabled without considering the claimant's age, education, and work experience.  20 C.F.R. § 404.1520(d).

9

### D.     *Past Relevant Work*

The assessment of a claimant's ability to perform past relevant work "reflect[s] the statute's focus on the functional capacity retained by the claimant."  *Pass v. Chater*, 65 F.3d 1200, 1204 (4th Cir. 1995).  At this step of the evaluation, the ALJ compares the claimant's residual functional capacity[5] with the physical and mental demands of the kind of work he has done in the past to determine whether the claimant has the residual functional capacity to do his past work.  20 C.F.R. § 404.1560(b).

### E.     *Other Work*

As previously stated, once the ALJ finds that a claimant cannot return to her prior work, the burden of proof shifts to the Commissioner to establish that the claimant could perform other work that exists in the national economy.  *See* 20 C.F.R. § 404.1520(f)–(g); *Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992).   To meet this burden, the Commissioner may sometimes rely exclusively on the Medical-Vocational Guidelines (the "grids").   Exclusive reliance on the "grids" is appropriate where the claimant suffers primarily from an exertional impairment, without significant nonexertional factors.[6]   20 C.F.R. Pt. 404, Subpt. P, App. 2, § 200.00(e); *Gory v. Schweiker*, 712 F.2d 929, 930–31 (4th Cir. 1983) (stating that exclusive reliance on the grids is appropriate in cases involving

---

[5]Residual functional capacity is "the most [a claimant] can do despite [his] limitations."  20 C.F.R. § 404.1545(e)

[6]An exertional limitation is one that affects the claimant's ability to meet the strength requirements of jobs. 20 C.F.R. § 404.1569a.  A nonexertional limitation is one that affects the ability to meet the demands of the job other than the strength demands.  *Id.*  Examples of nonexertional limitations include but are not limited to difficulty functioning because of being nervous, anxious, or depressed; difficulty maintaining attention or concentrating; difficulty understanding or remembering detailed instructions; difficulty seeing or hearing.  *Id.*

exertional limitations).  When a claimant suffers from both exertional and nonexertional limitations, the grids may serve only as guidelines.  *Gory*, 712 F.2d at 931.  In such a case, the Commissioner must use a vocational expert to establish the claimant's ability to perform other work.  20 C.F.R. § 404.1569a; *see Walker*, 889 F.2d at 49–50 ("Because we have found that the grids cannot be relied upon to show conclusively that claimant is not disabled, when the case is remanded it will be incumbent upon the [Commissioner] to prove by expert vocational testimony that despite the combination of exertional and nonexertional impairments, the claimant retains the ability to perform specific jobs which exist in the national economy.").  The purpose of using a vocational expert is "to assist the ALJ in determining whether there is work available in the national economy which this particular claimant can perform."  *Walker*, 889 F.2d at 50.  For the vocational expert's testimony to be relevant, "it must be based upon a consideration of all other evidence in the record, . . . and it must be in response to proper hypothetical questions which fairly set out all of claimant's impairments."  *Id.* (citations omitted).

## II.    Developing the Record

The ALJ has a duty to fully and fairly develop the record.  *See Cook v. Heckler*, 783 F.2d 1168, 1173 (4th Cir. 1986).  The ALJ is required to inquire fully into each relevant issue.  *Snyder*, 307 F.2d at 520.  The performance of this duty is particularly important when a claimant appears without counsel.  *Marsh v. Harris*, 632 F.2d 296, 299 (4th Cir. 1980).  In such circumstances, "the ALJ should scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts, . . . being especially diligent in

11

ensuring that favorable as well as unfavorable facts and circumstances are elicited." *Id.* (internal quotations and citations omitted).

### III.    Treating Physicians

The opinion of a claimant's treating physician must "be given great weight and may be disregarded only if there is persuasive contradictory evidence" in the record. *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987) (citing *Foster v. Heckler*, 780 F.2d 1125, 1130 (4th Cir. 1986) (holding that a treating physician's testimony is entitled to great weight because it reflects an expert judgment based on a continuing observation of the patient's condition over a prolonged period of time); *Mitchell v. Schweiker*, 699 F.2d 185, 187 (4th Cir. 1983)). If a treating physician's opinion on the nature and severity of a claimant's impairments is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record, the ALJ must give it controlling weight. 20 C.F.R. § 404.1527(d)(2); *see Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001). The ALJ may discount a treating physician's opinion if it is unsupported or inconsistent with other evidence. *Craig*, 76 F.3d at 590. Similarly, where a treating physician has merely made conclusory statements, the ALJ may afford the opinion such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments. *See id.* (holding there was sufficient evidence for the ALJ to reject the treating physician's conclusory opinion where the record contained contradictory evidence).

When a treating physician's opinion does not warrant controlling weight, the ALJ must nevertheless assign a weight to the medical opinion based on the 1) length of the treatment relationship and the frequency of examination; 2) nature and extent of the treatment relationship; 3) supportability of the opinion; 4) consistency of the opinion with the record a whole; 5) specialization of the physician; and 6) other factors which tend to support or contradict the opinion.  20 C.F.R. § 404.1527(d),.  In any instance, a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion. *See  Mitchell*, 699 F.2d at 187 (stating that treating physician's opinion must be accorded great weight because "it reflects an expert judgment based on a continuing observation of the patient's condition for a prolonged period of time"); 20 C.F.R. § 404.1527(d)(2).  An ALJ determination coming down on the side of a non-examining, non-treating physician's opinion can stand only if the medical testimony of examining and treating physicians goes both ways. *Smith v. Schweiker*, 795 F.2d 343, 346 (4th Cir.1986).

The ALJ is required to review all of the medical findings and other evidence that support a medical source's statement that a claimant is disabled. 20 C.F.R. § 404.1527(e). However, the ALJ is responsible for making the ultimate determination about whether a claimant meets the statutory definition of disability. *Id.*

## IV.    Medical Tests and Examinations

The ALJ is required to order additional medical tests and exams only when a claimant's medical sources do not give sufficient medical evidence about an impairment to determine whether the claimant is disabled.  20 C.F.R. § 404.1517; *see also Conley v.*

13

*Bowen*, 781 F.2d 143, 146 (8th Cir. 1986).  The regulations are clear: a consultative examination is not required when there is sufficient medical evidence to make a determination on a claimant's disability.  20 C.F.R. § 404.1517.  Under the regulations, however, the ALJ may determine that a consultative examination or other medical tests are necessary.  *Id.*

## V.     Pain

Congress has determined that a claimant will not be considered disabled unless he furnishes medical and other evidence (e.g., medical signs and laboratory findings) showing the existence of a medical impairment that could reasonably be expected to produce the pain or symptoms alleged.  42 U.S.C. § 423(d)(5)(A).  In evaluating claims of disabling pain, the ALJ must proceed in a two-part analysis.  *Morgan v. Barnhart,* 142 F. App'x 716, 723 (4th Cir. 2005) (unpublished opinion).  First, "the ALJ must determine whether the claimant has produced medical evidence of a 'medically determinable impairment which could reasonably be expected to produce . . . the actual pain, in the amount and degree, alleged by the claimant.'"  *Id.* (quoting *Craig,* 76 F.3d at 594).  Second, "if, and only if, the ALJ finds that the claimant has produced such evidence, the ALJ must then determine, as a matter of fact, whether the claimant's underlying impairment *actually* causes her alleged pain."  *Id*. (emphasis in original) (citing *Craig*, 76 F.3d at 595).

Under the Fourth Circuit's "pain rule," it is well established that "subjective complaints of pain and physical discomfort can give rise to a finding of total disability, even when those complaints [a]re not supported fully by objective observable signs."  *Coffman*,

829 F.2d at 518.   The ALJ must consider all of a claimant's statements about his symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence. 20 C.F.R. § 404.1528. Indeed, the Fourth Circuit has rejected a rule which would require the claimant to demonstrate objective evidence of the pain itself, *Jenkins v. Sullivan*, 906 F.2d 107, 108 (4th Cir. 1990), and ordered the Commissioner to promulgate and distribute to all administrative law judges within the circuit a policy stating Fourth Circuit law on the subject of pain as a disabling condition, *Hyatt v. Sullivan*, 899 F.2d 329, 336–37 (4th Cir. 1990). The Commissioner thereafter issued the following "Policy Interpretation Ruling":

> This Ruling supersedes, only in states within the Fourth Circuit (North Carolina, South Carolina, Maryland, Virginia and West Virginia), Social Security Ruling (SSR) 88-13, Titles II and XVI: Evaluation of Pain and Other Symptoms:
> ...
>
> **FOURTH CIRCUIT STANDARD:** Once an underlying physical or [m]ental impairment that could reasonably be expected to cause pain is shown by medically acceptable objective evidence, such as clinical or laboratory diagnostic techniques, the adjudicator must evaluate the disabling effects of a disability claimant's pain, even though its intensity or severity is shown only by subjective evidence.  If an underlying impairment capable of causing pain is shown, subjective evidence of the pain, its intensity or degree can, by itself, support a finding of disability.  Objective medical evidence of pain, its intensity or degree (i.e., manifestations of the functional effects of pain such as deteriorating nerve or muscle tissue, muscle spasm, or sensory or motor disruption), if available, should be obtained and considered.  Because pain is not readily susceptible of objective proof, however, the absence of objective medical evidence of the intensity, severity, degree or functional effect of pain is not determinative.

15

SSR 90-1p, 55 Fed. Reg. 31,898-02, at 31,899 (Aug. 6, 1990).  SSR 90-1p has since been superseded by SSR 96-7p, which is consistent with SSR 90-1p.  *See* SSR 96-7p, 61 Fed. Reg. 34,483-01 (July 2, 1996).  SSR 96-7p provides, "If an individual's statements about pain or other symptoms are not substantiated by the objective medical evidence, the adjudicator must consider all of the evidence in the case record, including any statements by the individual and other persons concerning the individual's symptoms."  *Id.* at 34,485; *see also* 20 C.F.R. § 404.1529(c)(1)–(c)(2) (outlining evaluation of pain).

## VI.    Credibility

The ALJ must make a credibility determination based upon all the evidence in the record.  Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding.  *Hammond v. Heckler*, 765 F.2d 424, 426 (4th Cir. 1985). Although credibility determinations are generally left to the ALJ's discretion, such determinations should not be sustained if they are based on improper criteria.  *Breeden*, 493 F.2d at 1010 ("We recognize that the administrative law judge has the unique advantage of having heard the testimony firsthand, and ordinarily we may not disturb credibility findings that are based on a witness's demeanor.  But administrative findings based on oral testimony are not sacrosanct, and if it appears that credibility determinations are based on improper or irrational criteria they cannot be sustained.").

16

## APPLICATION AND ANALYSIS

**Listing 12.06**

Plaintiff contends the ALJ's decision that Plaintiff's post traumatic stress disorder ("PTSD") does not meet or equal a listing is not supported by substantial evidence. The Court disagrees.

To determine whether a claimant's impairments meet or equal a listed impairment, the ALJ identifies the relevant listed impairments and compares the listing criteria with the evidence of the claimant's symptoms. *See Cook v. Heckler*, 783 F.2d 1168, 1173 (4th Cir. 1986) (stating that without identifying the relevant listings and comparing the claimant's symptoms to the listing criteria, "it is simply impossible to tell whether there was substantial evidence to support the determination"); *Beckman v. Apfel*, No. WMN-99-3696, 2000 WL 1916316, at *9 (D. Md. Dec. 15, 2000) (unpublished opinion) ("In cases where there is 'ample factual support in the record' for a particular listing, the ALJ must provide a full analysis to determine whether the claimant's impairment meets or equals the listing." (quoting *Cook*, 783 F.2d at 1172)).

### *Criteria of Relevant Listing*

In this case, the ALJ determined the relevant listing was 12.06, Anxiety Related Disorders. Listing 12.06 reads as follows:

> In these disorders anxiety is either the predominant disturbance or it is experienced if the individual attempts to master symptoms; for example, confronting the dreaded object or situation in a phobic disorder or resisting the obsessions or compulsions in obsessive compulsive disorders.
>
> The required level of severity for these disorders is met when the requirements in both A and B are satisfied, or when the requirements in both A and C are satisfied.

17

A. Medically documented findings of at least one of the following:

    1. Generalized persistent anxiety accompanied by three out of four of the following signs or symptoms:

        a. Motor tension; or

        b. Autonomic hyperactivity; or

        c. Apprehensive expectation; or

        d. Vigilance and scanning;

    Or

    2. A persistent irrational fear of a specific object, activity, or situation which results in a compelling desire to avoid the dreaded object, activity, or situation; or

    3. Recurrent severe panic attacks manifested by a sudden unpredictable onset of intense apprehension, fear, terror and sense of impending doom occurring on the average of at least once a week; or

    4. Recurrent obsessions or compulsions which are a source of marked distress; or

    5. Recurrent and intrusive recollections of a traumatic experience, which are a source of marked distress;

And

B. Resulting in at least two of the following:

    1. Marked restriction of activities of daily living; or

    2. Marked difficulties in maintaining social functioning; or

    3. Marked difficulties in maintaining concentration, persistence, or pace; or

    4. Repeated episodes of decompensation, each of extended duration.

18

Or

C. Resulting in complete inability to function independently outside the area of one's home.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.06.

### The ALJ's Decision

When considering whether Plaintiff's impairments met or equaled Listing 12.06, the ALJ found Plaintiff failed to meet "paragraph B" and "paragraph C"[7] criteria.[8] [R. 13–14.] As the listings explain,

> [t]he criteria in paragraphs B and C describe impairment-related functional limitations that are incompatible with the ability to do any gainful activity. The functional limitations in paragraphs B and C must be the result of the mental disorder described in the diagnostic description, that is manifested by the medical findings in paragraph A.

Id. § 12.00A.

### Paragraph B Criteria

To rate a claimant's degree of functional limitation, the ALJ considers four broad functional areas: activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. Id. § 404.1520a(c)(3); see id. Pt. 404, Subpt. P, App. 1, § 12.00C and 12.06(B). To arrive at a rating, the ALJ considers factors such as "the quality and level of [the claimant's] overall functional performance, any episodic limitations, the amount of supervision or assistance [the claimant] require[s], and the

---

[7] Although the ALJ indicated he considered Listing 12.06, he analyzed the "paragraph C" criteria of Listing 12.04 instead of the "paragraph C" criteria of Listing 12.06. As discussed in more detail below, this case should be remanded on this basis for the ALJ to properly consider whether Plaintiff's impairment met or medically equaled a listing.

[8] The Commissioner concedes the Plaintiff meets "Paragraph A" criteria. [Doc 7 at 11 .]

settings in which [the claimant is] able to function." *Id.* § 404.1520a(c)(2); *see id.* Pt. 404, Subpt. P, App. 1, § 12.00C–H. The ratings for the first three functional areas—activities of daily living; social functioning; and concentration, persistence, or pace—consist of a five-point scale: none, mild, moderate, marked, and extreme. *Id.* § 404.1520a(c)(4). For the fourth functional area—episodes of decompensation—the ALJ uses a four-point scale: none, one or two, three, and four or more. *Id.* If the ALJ rates the claimant's degree of limitation as none or mild in the first three functional areas and none in the fourth functional area, the ALJ will usually conclude the claimant's impairment is not severe,[9] "unless the evidence otherwise indicates that there is more than a minimal limitation in [the claimant's] ability to do basic work activities." *Id.* § 404.1520a(d)(1).

In this case, the ALJ found Plaintiff had no greater than mild restriction in activities of daily living. [R. 13.] The ALJ found Plaintiff did some house cleaning, laundry, ironing, household repairs, yard work, and cared for his grandchildren. [*Id.*] The ALJ also noted Plaintiff enjoyed watching television and fishing. [*Id.*]

With respect to social functioning, the ALJ found Plaintiff had no greater than moderate difficulties. [*Id.*] The ALJ noted Plaintiff regularly attended church, attended monthly church meetings, helped care for his grandchildren, had a stable marriage of approximately 35 years, shopped in stores, and sat and talked with family and friends on a daily basis. [*Id.*]

With respect to concentration, persistence, or pace, the ALJ found Plaintiff had no greater than moderate difficulties. [*Id.*] The ALJ noted Plaintiff reported occasional

---

[9] "An impairment or combination of impairments is not severe if it does not significantly limit [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1521(a).

20

problems with concentration and memory, but Veterans' Administration ("VA") hospital notes and evaluations showed adequate concentration and memory with the ability to drive, handle finances, cook, keep up with medications, and care for grandchildren on a fairly regular basis.  [*Id.*]

The ALJ also found no episode of decompensation since the date of the Commissioner's previous final and binding decision of June 12, 2006.  [*Id.*]  The ALJ noted Plaintiff had experienced one episode of decompensation in January 2006 but had not experienced any additional episodes of decompensation since his discharge in March 2006.  [*Id.*]  Further, the ALJ noted Plaintiff's mental status had been stable since March 2006.  [*Id.*]

Upon review of the record, the Court finds the ALJ's decision with respect to "paragraph B" criteria is supported by substantial evidence.[10]  With respect to activities of daily living, a May 2006 Report of Contact prepared by an Administration employee reflects that Plaintiff's wife stated Plaintiff did not have problems with grooming or taking care of himself.  [R. 130.]  Plaintiff's wife also stated Plaintiff worked around the house, did house chores, drove, went to church, and spent time with his grandchildren.  [*Id.*]  In August 2006,

---

[10]Plaintiff does not dispute the ALJ's finding as to episodes of decompensation; however, Plaintiff argues that "the greater weight of the evidence" indicates that he had marked limitations in activities of daily living, maintaining social functioning, and maintaining concentration, persistence, or pace.  [Doc. 6 at 5.]  Plaintiff argues the ALJ erred in finding only mild restrictions in activities of daily living because Plaintiff's medical records show the ALJ overstated Plaintiff's abilities.  [*Id.*]  Specifically, Plaintiff contends he has a greater degree of functional limitation because he (1) tires easily when making meals; (2) only shops for food and clothes once a month; (3) fails to obtain restorative sleep; (4) suffers from flashbacks triggered by his environment; (5) experiences mood swings and hypervigilence, where he repeatedly checks doors and window locks and conducts perimeter searches; and (6) suffers from cluster headaches.  [*Id.*]  Plaintiff also argues the record shows he does not function well around a lot of people and suffers from mood swings [*id.* at 6], and the record fails to establish that he can sustain focused concentration as required under Listing 12.00C [*id.* at 7].  The Court finds that, contrary to Plaintiff's contentions, the ALJ considered all of these complaints in reaching his decision.

21

Plaintiff reported he did not have time to commit to a post-inpatient treatment PTSD group because he was busy spending time with his grandchildren, taking them fishing and to ball games. [R. 367.] Plaintiff also reported that he worked around the house and stayed busy. [*Id.*] In March 2009, Plaintiff reported that in the mornings, he walked his grandson—who lived with Plaintiff and his wife—to the school bus stop. [R. 809–10.] Further, in the Function Report he completed, Plaintiff indicated that his daily activities included house cleaning, taking care of bills, doing yard work, and occasionally picking up his grandchildren from school and taking them places. [R. 114.] He also indicated that he helped with meals about once a week, taking about an hour and a half, and he went shopping two or three times a month for his personal needs. [R. 116–17.] Additionally, Plaintiff reported he could pay bills, count change, handle a savings account, and use a checkbook or money orders. [R. 117.] Additionally, records from the VA hospital reveal that doctors and clinicians observed Plaintiff to be well-groomed at his appointments. [*See, e.g.*, R. 367, 462, 484, 820.]

With respect to social functioning, at a December 2006 examination, Plaintiff stated that he was busy with multiple activities during the holiday season. [R. 616.] At an August 2008 examination, Plaintiff reported that he had taken a trip to New Orleans, which he had enjoyed. [R. 746.] In March 2009, Plaintiff reported he tried to stay busy and interactive. [R. 810.] Plaintiff also regularly attended a combat veterans' group at the VA hospital. [*See, e.g.*, R. 354–55, 359–60, 372–73, 375–76, 379–86, 459, 460–61, 468–72, 476–78, 602–03, 609–13, 634–37, 688–94, 696–98.] In the Function Report he completed, Plaintiff indicated he went to church nearly every Sunday and went to group meetings at church

22

once a month. [R. 118.] Plaintiff also reported that he did not have problems getting along with others.[11] [R. 119.]

With respect to concentration, persistence, or pace, August 2006 examination notes indicated Plaintiff's short-term memory was impaired in that he "forgets what he goes to [the] store to get, forgets what he's going to get in another room." [R. 368.] However, his long term memory was found to be intact, and his concentration/attention was noted as good. [*Id.*] Further, repeated evaluations at the VA hospital revealed Plaintiff had adequate concentration and memory. [*See, e.g.*, R. 368, 463, 686, 746, 810.] Moreover, Plaintiff indicated in his Function Report that he did not need reminders to take care of his personal needs or grooming or to take his medicine. [R. 116.]

Based on a review of the record, the Court finds the ALJ's conclusion that Plaintiff's PTSD does not meet the "paragraph B" criteria of Listing 12.06 is supported by substantial evidence.

### Paragraph C Criteria

As previously mentioned, although the ALJ indicated he considered Listing 12.06, he analyzed the "paragraph C" criteria listed in Listing 12.04 instead of the "paragraph C" criteria listed in Listing 12.06. [R. 13–14.] Because the ALJ did not discuss the "paragraph A" criteria in his decision, the Court is unable to determine whether (a) the ALJ's specific

---

[11] However, on the same page of the Function Report, Plaintiff indicated that he sometimes had difficulty getting along with others as a result of his condition. [R. 119.] The Court notes this indication by Plaintiff of some trouble getting along with others is consistent with the ALJ's finding that Plaintiff had, at most, moderate difficulties with respect to social functioning. [R. 13.] As stated above, Plaintiff would need to exhibit marked difficulties in social functioning and one other functional area, or have experienced repeated episodes of decompensation, to meet Listing 12.06. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.06. Therefore, the Court finds this indication does not detract from the substantial evidence that supports the ALJ's decision that Plaintiff does not meet the "paragraph B" criteria of Listing 12.06.

reference to Listing 12.06 was a scrivener's error, and the ALJ intended to consider Listing 12.04, as indicated by the discussion of Listing 12.04's "paragraph C" criteria, or (b) whether the error was in the discussion of Listing 12.04's "paragraph C" criteria, and the ALJ intended to consider Listing 12.06, including Listing 12.06's "paragraph C" criteria.  In any event, because the Court is unsure which listing the ALJ intended to analyze, the Court cannot find that the ALJ's decision is supported by substantial evidence with respect to the "paragraph C" criteria.  On remand, the ALJ should either (a) clarify that he intended to consider Listing 12.04 or (b) properly consider Listing 12.06, including Listing 12.06's "paragraph C" criteria.

**Remaining Issues**

As stated above, the Court is unable to review the ALJ's finding at Step 3 regarding whether  Plaintiff's PTSD met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.   When a claimant's impairment or combination of impairments meets or equals one of the listed impairments in Appendix 1, the claimant is deemed disabled and no further analysis is required. *See* 20 C.F.R. § 404.1520(a)(4)(iii). Accordingly, because Plaintiff's remaining issues may be rendered moot on remand, the Court need not address them.  *See Neal v. Astrue*, 2010 WL 3046987, at * (D.S.C. Aug. 2, 2010) (citing *Boone v. Barnhart*, 353 F.3d 203, 211 n.19 (3d Cir.2003) (remanding on other grounds and declining to address the claimant's additional arguments)).

## CONCLUSION

Wherefore,  based  upon  the  foregoing,  the  Court  recommends  that  the Commissioner's decision be REVERSED pursuant to sentence four of 42 U.S.C. § 405(g)

and that the case be REMANDED to the Commissioner for further administrative action consistent with this recommendation.

IT IS SO RECOMMENDED.

s/Jacquelyn D. Austin
United States Magistrate Judge

July 28, 2011
Greenville, South Carolina