IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| MATTHEW STEVENSON, | ) | C/A No. 8:10-CV-01565-DCN |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| MICHAEL J. ASTRUE, | ) | **ORDER AND OPINION** |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

This matter is before the court on United States Magistrate Judge Jacquelyn D. Austin's Report and Recommendation (R&R) that this court remand the Commissioner's decision denying plaintiff's application for disability insurance benefits (DIB) for further administrative action pursuant to sentence four of 42 U.S.C. § 405(g). Defendant filed objections to the R&R. For the reasons set forth below, the court adopts the R&R in part and affirms the administrative law judge's (ALJ) denial of benefits.

## I.  BACKGROUND

Plaintiff filed an application for DIB on September 5, 2006,[1] alleging disability as of January 23, 2006, due to Post Traumatic Stress Disorder (PTSD), high blood pressure, headaches, arthritis, high cholesterol, and vision problems. Tr. 10, 48, 52. His application was denied initially on November 15, 2006, and upon reconsideration on February 13, 2007. Tr. 10, 46-47, 61. Plaintiff timely requested

---

[1] Plaintiff filed an initial application on April 14, 2006, which was denied on June 12, 2006. Tr. 48. The ALJ found no reason to re-open that application, and plaintiff has not challenged the ALJ's decision. Tr. 10.

1

an administrative hearing, which was held on March 25, 2009. Tr. 10, 23-44. On April 15, 2009, the ALJ found that plaintiff was not disabled because his mental impairment did not meet or medically equal the criteria of Listing 12.06, Anxiety Related Disorders, and he could perform jobs existing in significant numbers in the national economy with certain nonexertional limitations. Tr. 12-22. On April 26, 2010, the ALJ's decision became the Commissioner's final determination when the Appeals Council denied plaintiff's request for review. Tr. 1-3.

Plaintiff filed the instant action on June 17, 2010. After reviewing the record and law, the magistrate judge recommended that the ALJ's decision be remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further administrative action. Specifically, the magistrate judge found that the ALJ had considered the wrong listing criteria in his analysis at step three of the sequential evaluation process, and therefore the magistrate judge was unable to find substantial evidence supporting the ALJ's decision. Defendant filed objections to the R&R on August 15, 2011.

## II. STANDARD OF REVIEW

The court's review is limited to determining whether the ALJ's findings are supported by substantial evidence and were reached through application of the correct legal standards. See Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987). This court is charged with conducting a de novo review of any portion of the magistrate judge's R&R to which specific, written objections are made. 28 U.S.C. § 636(b)(1). A party's failure to object is accepted as agreement with the conclusions of the magistrate judge. See Thomas v. Arn, 474 U.S. 140, 149-50 (1985). The recommendation of the magistrate judge carries no presumptive weight, and the

responsibility to make a final determination rests with this court. Mathews v. Weber, 423 U.S. 261, 270-71 (1976). This court adopts the factual findings of the magistrate judge that defendant has not objected to. See Arn, 474 U.S. at 149-50.

The court may remand a case to the Commissioner for a rehearing under sentence four or sentence six of 42 U.S.C. § 405(g). See Melkonyan v. Sullivan, 501 U.S. 89, 101-02 (1991). Under sentence four, the court may enter a judgment "affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Although the court reviews the magistrate judge's recommendation de novo, judicial review of the Commissioner's final decision regarding disability benefits "is limited to determining whether the findings of the [Commissioner] are supported by substantial evidence and whether the correct law was applied." Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). "Substantial evidence" has been defined as,

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."

Id. (internal citations omitted). "[I]t is not within the province of a reviewing court to determine the weight of the evidence, nor is it the court's function to substitute its judgment for that of the [Commissioner] if his decision is supported by substantial evidence." Id. Instead, when substantial evidence supports the Commissioner's decision, this court must affirm that decision even if it disagrees with the Commissioner. Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972). "Ultimately, it is the duty of the administrative law judge reviewing a case, and not

the responsibility of the courts, to make findings of fact and to resolve conflicts in the evidence." Hays, 907 F.2d at 1456.

This court also reviews the ALJ's decision for harmless error. Harmless error analysis is applied cautiously in the administrative review setting. See Fischer-Ross v. Barnhart, 431 F.3d 729, 733 (10th Cir. 2005). Courts apply harmless error analysis "to supply a missing dispositive finding . . . where, based on material the ALJ did at least consider (just not properly), we could confidently say that no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter in any other way." Id. at 733-34 (internal quotation marks omitted); see also Davis v. Astrue, No. 07-231, 2008 WL 540899, at *3 (D.S.C. Feb. 22, 2008) (recognizing harmless error analysis). A remand is not required under harmless error analysis "for a more thorough discussion of the listings when confirmed or unchallenged findings made elsewhere in the ALJ's decision confirm the step three determination under review." Fischer-Ross, 431 F.3d at 734.

### III.  DISCUSSION

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505. The Social Security regulations establish a five-step sequential evaluation process to determine whether a claimant is disabled. See 20 C.F.R. §§ 404.1520, 416.920. Under this process, the ALJ must determine whether the claimant:  (1) is currently engaged in substantial gainful

activity; (2) has a severe impairment; (3) has an impairment which equals an illness contained in 20 C.F.R. pt. 404, subpt. P, app. 1, which warrants a finding of disability without considering vocational factors; (4) if not, whether the claimant has an impairment which prevents him from performing past relevant work; and (5) if so, whether the claimant is able to perform other work considering both his remaining physical and mental capacities (defined by his RFC) and his vocational capabilities (age, education, and past work experience) to adjust to a new job. See 20 C.F.R. § 404.1520; Hall v. Harris, 658 F.2d 260, 264-65 (4th Cir. 1981). The applicant bears the burden of proof during the first four steps of the inquiry, while the burden shifts to the Commissioner for the final step. Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995) (citing Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1992)).

At the first and second steps of the sequential evaluation, the ALJ found that plaintiff has not engaged in substantial gainful activity since June 12, 2006, and that plaintiff suffers from PTSD, a severe impairment. Tr. 12. At the third step, however, the ALJ determined that plaintiff "does not have an impairment or combination of impairments that meet or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." Tr. 13. At the later steps, the ALJ found that plaintiff's impairment prevents him from performing any past relevant work but that he is capable of performing other work with nonexertional limitations, such as low stress work requiring few decisions. Tr. 14-20. The ALJ concluded that plaintiff can perform jobs that exist in significant numbers in the national economy. Tr. 21.

At step three, to determine whether a claimant's impairment or combination of impairments meets or medically equals the criteria of an impairment listed in 20

C.F.R. pt. 404, subpt. P, app. 1, the ALJ must identify the relevant listed impairments and then compare the listing criteria with evidence of claimant's symptoms. Cook v. Heckler, 783 F.2d 1168, 1173 (4th Cir. 1986). "Without such an explanation, it is simply impossible to tell whether there was substantial evidence to support the determination." Id. Here, the ALJ looked to Listing 12.06, Anxiety Related Disorders, which states, "The required level of severity for these disorders is met when the requirements in both A and B are satisfied, or when the requirements in both A and C are satisfied." 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.06.

The ALJ did not discuss "paragraph A" of Listing 12.06, but the parties agree that plaintiff met the "paragraph A" criteria. Addressing "paragraph B," the ALJ found plaintiff failed to meet the criteria. Tr. 13. Turning to "paragraph C," the ALJ considered Listing 12.04's "paragraph C" criteria, rather than the applicable criteria found in Listing 12.06's "paragraph C." Specifically, the ALJ found,

> The claimant does not suffer from a mental disorder of at least two years' duration that has caused more than minimal limitation of ability to do basic work activity with symptoms or signs currently attenuated by medication or psychosocial support and one of the following[:]  1) repeated episodes of decompensation, each of extended duration, 2) a residual disease process that has resulted in such marginal adjustment that even a minimal increase of mental demands or changes in the environment would be predicted to cause the individual to decompensate, or 3) current history of one or more years' inability to function outside of a highly supportive living arrangement.

Tr. 13-14. The ALJ clearly compared plaintiff's impairments with Listing 12.04's "paragraph C" criteria[2] rather than the appropriate Listing 12.06 "paragraph C"

---

[2] C. Medically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support, and one of the following:

6

criteria. Under Listing 12.06 "paragraph C," the ALJ should have determined whether plaintiff's impairments "[r]esult[ed] in complete inability to function independently outside the area of [his] home." 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.06(C).

### A.     Listing 12.06 Analysis

Plaintiff argues the ALJ erred in finding plaintiff's impairments did not meet or medically equal the Listing 12.06 criteria. First, to satisfy the "paragraph B" criteria of Listing 12.06, the mental impairment must result in at least two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation, each of extended duration. Id. § 12.06(B). Plaintiff argues the ALJ erred in finding that he has no greater than mild restriction in activities of daily living, no greater than moderate difficulties in social functioning, and adequate concentration and memory.[3]

A claimant for disability has the burden of proving her disability. Hall, 658 F.2d at 264. After identifying the proper listing criteria, the ALJ should "compare[] each of the listed criteria to the evidence of [plaintiff's] symptoms." Cook, 783 F.2d at 1173. With respect to activities of daily living, the record indicates that plaintiff

---

1. Repeated episodes of decompensation, each of extended duration; or
2. A residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or
3. Current history of 1 or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement.
20 C.F.R. pt. 404, subpt. P, app. 1, § 12.04(C).

[3] Plaintiff does not dispute the ALJ's finding as to episodes of decompensation. The ALJ found that plaintiff experienced one episode of decompensation in January 2006, prior to the previous binding decision denying benefits. Tr. 13.

does housework, drives, goes to church, spends time with his grandchildren, and can pay bills, count change, handle a savings account, and use a checkbook or purchase money orders. Tr. 114, 116-17, 130, 367. Although plaintiff suffers from cluster headaches, the headaches are now controlled and less frequent. See Tr. 614, 685, 730. As for social functioning, plaintiff reported taking a trip to New Orleans, regularly attending a combat veterans' group at the VA hospital, and regularly attending church meetings. Tr. 118, 354-55, 746. Finally, with respect to concentration, persistence, or pace, examination notes indicated that plaintiff does experience short-term memory impairments, see Tr. 368, but repeated evaluations reveal that plaintiff has adequate concentration and memory. See Tr. 463, 730, 746. Based on the foregoing, the court finds that the ALJ's determination that plaintiff does not meet the "paragraph B" criteria of Listing 12.06 is supported by substantial evidence, and adopts the magistrate judge's recommendation on this issue.

As for "paragraph C," the magistrate judge found the ALJ erroneously compared plaintiff's impairment to Listing 12.04 "paragraph C," and recommended remand. Defendant objects to the R&R on the ground that the error was harmless.[4] Harmless error analysis is appropriate "to supply a missing dispositive finding . . . where, based on material the ALJ did at least consider (just not properly), we could confidently say that no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter in any other way." Fischer-Ross, 431

---

[4] Defendant also objects that plaintiff waived any argument that he satisfied Listing 12.06's "paragraph C" criteria. In his opening brief, plaintiff only specifically mentions "paragraph A" and "paragraph B." See Anderson v. Dep't of Labor, 422 F.3d 1155, 1174, 1182 n.51 (10th Cir. 2005) (finding issue waived when not raised in opening brief). However, because plaintiff generally contended the ALJ erred in finding plaintiff did not meet Listing 12.06, the court finds the 12.06 "paragraph C" argument is not waived.

F.3d at 733-34 (internal quotation marks omitted). In this case, the ALJ made specific findings that conclusively negate the possibility that plaintiff's PTSD meets Listing 12.06's "paragraph C" requirement. At the later steps, the ALJ sufficiently addressed plaintiff's ability to function independently outside the area of his home, as required by Listing 12.06:

> Review of the evidence indicates that [plaintiff] is quite involved in his grandchildren's care . . . . There are frequent references to his taking his grandchildren fishing, to the park, and to ball games and watching his grandson play baseball. He also indicated that he takes and picks up his grandchildren either from school or the bus stop and that he also takes them places after school and cares for them until the child's parent gets off work. The claimant reported that he does some house cleaning, laundry, ironing, household repair, and yard work. He is able to handle the household finances, fix sandwiches and complete meals at times, drive, go out alone, shop for whatever he needs, and wash his car or truck. He has no difficulties with personal care and reported that he sits and talks with family and friends daily, walks two miles daily, watches television, attends church every Sunday, attends a church group meeting once a month, and attends group sessions at the Veterans' Administration. . . . Progress records also referred to his enjoying a recent trip to New Orleans and looking forward to a trip to Memphis, Tennessee.

Tr. 19. As this passage demonstrates, the ALJ amply considered whether plaintiff's impairment "[r]esult[s] in complete inability to function independently outside the area of one's home" and determined that it does not. 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.06(C).

Admittedly, courts in this Circuit and elsewhere are cautious in applying harmless error analysis in the administrative setting. See Davis, 2008 WL 540899, at *3. Several courts have applied harmless error when the ALJ did not specifically compare a claimant's impairment to the relevant Listing criteria at the appropriate

step, but addressed the reasons for the claimant's failure to meet the Listing criteria later in the decision.[5] Other courts, however, have found harmless error inapplicable.[6] In the present case, the court finds that the ALJ addressed plaintiff's ability to function outside of his home in the latter portion of his decision, and the error in misapplying Listing 12.04's "paragraph C" was harmless. Because no reasonable factfinder could resolve the matter in any other way, see Fischer-Ross, 431 F.3d at 733-34, the ALJ's decision is supported by substantial evidence.

### B. Residual Functional Capacity Assessment

Plaintiff argues the ALJ's finding regarding plaintiff's residual functional capacity was not supported by substantial evidence. This court disagrees. "RFC is what an individual can still do despite his or her limitations." SSR 96-8p, 1996 WL 374184, at *2 (July 2, 1996). RFC represents the most a claimant can do despite his or her limitations, not the least. Id. In making an RFC assessment, the ALJ must consider all of the relevant evidence, and discuss the claimant's ability to do sustained work activities in an ordinary work setting on a regular and continuing basis. Id. at

---

[5] See, e.g., McCartney v. Apfel, 28 Fed. App'x 277, 279-80 (4th Cir. 2002) ("Because the record is clear that the ALJ analyzed McCartney's conditions through the prism of Listing 12.06, we reject McCartney's claim that the ALJ's decision was procedurally inadequate."); Crockett v. Astrue, No. 2:10cv00064, at *10 (W.D. Va. June 1, 2011) ("[N]otwithstanding the ALJ's failure to explicitly state the reasons that Crockett's impairment did not equal a listed impairment, substantial evidence supports such a finding because the ALJ thoroughly discussed the evidence relating to Crockett's previous fracture and, read as a whole, the ALJ's decision establishes that the appropriate factors were considered in finding that Crockett's impairment did not equal § 1.07."); Songer v. Astrue, No. 09-01743, 2010 WL 3724706, at *13-14 (D.S.C. Sept. 17, 2010) (applying harmless error when the ALJ failed to address Listing 14.09 at step two of the sequential process because she adequately addressed it later in the decision).

[6] See, e.g., Davis, 2008 WL 540899, at *3-4 (finding "the ALJ's failure to provide an adequate explanation of her step three determination [wa]s not harmless error"); Harmon v. Astrue, No. 09-1964, 2010 WL 3786496, at *7 (D.S.C. Sept. 21, 2010) (finding harmless error analysis inappropriate when the ALJ neglected to consider plaintiff's alleged COPD and failed to provide sufficient evidence in analyzing whether the combined effect of plaintiff's impairments resulted in disability).

*2, 5. "A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." Id. at *2.

Here, the ALJ appropriately assessed plaintiff's limitations, impairments, and extertional and nonexertional capacities in determining that plaintiff "has the residual functional capacity to perform a full range of work at all exertional levels but with the following non-exertional limitations:  restrictions to unskilled, low stress work (which I define as requiring few decisions) that does not require interaction with the public." Tr. 14.  First, the ALJ considered plaintiff's Global Assessment of Functioning (GAF) reports from the VA Hospital, which more recently showed functioning in the range of 65 to 70, indicating only mild symptoms.[7]  Tr. 15.  Plaintiff contends the ALJ erred in giving significant weight to these scores.  Although "the GAF score, standing alone, is of little significance to the fact finder, as there is no indication of whether it applies to symptom severity or level of functioning," the ALJ here considered GAF scores in combination with reports that plaintiff's PTSD had remained stable and other medical evidence.  Tr. 20; see Chapman v. Astrue, No. 07-2868, 2010 WL 419923, at *7 (D.S.C. Jan. 29, 2010).  The ALJ also thoroughly discussed plaintiff's impairments and limitations and indicated that he considered the "entire record."  The ALJ therefore did not consider the GAF scores "standing alone" but in conjunction with other relevant medical evidence.  It does not appear that the ALJ erred in affording substantial weight to the GAF scores and, if he did, the error was harmless.

---

[7] Plaintiff's GAF scores have ranged from 35 in March 2006 to 70 in February 2007.  Tr. 489, 795. The ALJ focused on GAF scores reported between June 2006, when plaintiff's initial application for DIB was denied, and the date of his decision.

In addition, plaintiff argues the ALJ erred in finding plaintiff's "statements concerning the intensity, persistence and limiting effects of [his] symptoms are not substantiated by the total record and not credible." Tr. 18. "Because [the ALJ] had the opportunity to observe the demeanor and to determine the credibility of the claimant, the ALJ's observations concerning these questions are to be given great weight." Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984). Subjective complaints are evaluated under two steps: (1) there must be documentation by objective medical evidence of an impairment that would be reasonably expected to cause the subjective complaints regarding severity and persistence; and (2) the ALJ must then consider the entire record to assess the credibility of these subjective statements of severity. Craig v. Chater, 76 F.3d 585, 591-96 (4th Cir. 1996).

Under the first step, the ALJ found that the medically determinable impairments could reasonably be expected to produce plaintiff's alleged symptoms. Tr. 18. However, under the second step, the ALJ found plaintiff's statements regarding intensity, persistence, and limiting effects were not substantiated by the total record and therefore incredible. Tr. 18. The ALJ noted a lack of objective medical evidence supporting plaintiff's subjective allegations. For instance, plaintiff reported at the administrative hearing that he was unable to work because of his cluster headaches: "I don't know when they're coming on and, if I can't give 100 percent on a job and be alert . . . then I don't need to be on that job." Tr. 39-40. The ALJ found that such statements regarding severity and persistence of impairments were unsubstantiated when compared to medical evidence showing plaintiff's headaches were less frequent and responding well to treatment. See Tr. 18, 730, 746.

Similarly, the ALJ considered plaintiff's statements regarding his PTSD and inability to function at work and found them inconsistent with his active lifestyle. Tr. 19. For these reasons, this court finds the ALJ's credibility determination supported by substantial evidence.

Finally, the ALJ found no other restrictions in claimant's ability to sustain performance of basic work-related activities. Tr. 20. As such, the ALJ implicitly found that plaintiff is physically able to work an eight hour day as required by Social Security Ruling 96-8p. See Hines v. Barnhart, 453 F.3d 559, 563 (4th Cir. 2006). This court therefore finds the RFC assessment is supported by substantial evidence.

### C.     Ability to Perform Other Work

Plaintiff's final argument is that the ALJ erred in finding that plaintiff can perform jobs existing in significant numbers in the national economy. Specifically, plaintiff contends that the ALJ should have considered plaintiff's work history and advanced age in conjunction with his physical impairments. The Commissioner bears the burden at this step to show: "(1) that the claimant, considering his age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job and (2) that this specific type of job exists in the national economy." Hall, 685 F.2d at 264. Here, a vocational expert hypothetically considered "an individual of the Claimant's age, education, [and] past job experience" in determining that plaintiff can perform unskilled jobs existing in significant numbers in the national economy. Tr. 42 (emphasis added). Plaintiff's attorney specifically asked the vocational expert whether plaintiff's "current age of 61[] is . . . a positive, neutral or negative vocational factor," to which the expert responded that it is "more of a

13

negative vocational factor" and is "probably working against him." Tr. 43. Plaintiff's age and prior work experience were therefore properly considered at the administrative hearing and by the ALJ in reaching his decision. See Tr. 21.

Plaintiff analogizes his present situation with the hypothetical person described in Social Security Ruling 85-15, Example 2: "Someone who is of advanced age, has a limited education, has no relevant work experience, and has more than a nonsevere mental impairment will generally be found disabled." 1985 WL 56857, at *5 (1985). However, "[i]f, despite the nonexertional impairment(s), an individual has a large potential occupational base, he or she would ordinarily not be found disabled in the absence of extreme adversities in age, education, and work experience." Id. at *3. Here, plaintiff is of advanced age, see 20 C.F.R. § 404.1563, and has a severe impairment, PTSD. However, he has at least a high school education, see Tr. 20, rather than a "limited education" (generally defined as having between a 7th and 11th grade level of formal education). See 20 C.F.R. § 404.1564(b)(3). In addition, the ALJ found plaintiff does have past relevant work experience, defined as "work that you have done within the past 15 years, that was substantial gainful activity, and that lasted long enough for you to learn to do it." Id. § 404.1560(b)(1). Finally, the ALJ found no exertional limitations. Tr. 14. Accordingly, the ALJ applied the decision making framework found at 20 C.F.R. pt. 404, subpt. P, app. 2, § 204.00, and found that plaintiff can perform jobs existing in significant numbers in the national economy and is not disabled. Based on these considerations and the vocational expert's testimony, the ALJ's decision is supported by substantial evidence.

14

## IV.   CONCLUSION

For the reasons set forth above, the magistrate judge's R&R is **ADOPTED IN PART** and the court **AFFIRMS** the Commissioner's decision denying benefits.

**AND IT IS SO ORDERED**.

_____
**DAVID C. NORTON**
**CHIEF UNITED STATES DISTRICT JUDGE**

**September 28, 2011**
**Charleston, South Carolina**